HAROLD MARTIN, Plaintiff-Appellant, v. CHICAGO TRANSIT AUTHORITY, Defendant-Appellee.

First District (3rd Division)    No. 83—1111

Opinion filed September 19, 1984.—Modified on denial of rehearing December 19, 1984.

Leonard M. Ring & Associates, of Chicago (Leonard M. Ring and Judith E. Fors, of counsel), for appellant.

Wildman, Harrold, Allen & Dixon, of Chicago (Donald M. Flayton and James D. Jordan, of counsel), for appellee.

JUSTICE WHITE delivered the opinion of the court:

The sole issue presented by this appeal is whether our supreme court's decision in *Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 328 N.E.2d 538, required the circuit court of Cook County to enter summary judgment in favor of defendant, Chicago Transit Authority (CTA), and against plaintiff, Harold Martin. We hold that it did not.

The depositions before the circuit court upon the CTA's motion for summary judgment reveal the following undisputed facts. In 1978, Martin was employed by the Chicago police department and was assigned to the department's Mass Transit Unit. He worked primarily on the CTA's Jackson Park-Englewood elevated train line. On June 6, 1978, shortly after 9 p.m., Martin boarded the second car of an eastbound CTA train at the Central Avenue station on the Lake Street line. He was off duty and not in uniform, but he was carrying his service revolver. The train had travelled one or two stops when three men boarded the car in which Martin was riding. After the train started to move, one of these men reached into his pocket, pulled out a handgun, and fired a shot into the ceiling of the car. This man announced that the three men were going to take over the train and rob the passengers. Martin responded by drawing his service revolver and simultaneously identifying himself as a police officer. Several shots were exchanged, and Martin was shot in the head, shoulder and leg.

Martin's complaint alleged negligence on the part of the CTA in that the CTA failed to supply guards, failed to warn passengers of the dangers of riding the Lake Street elevated train, failed to prevent persons armed with weapons from riding its elevated trains, and failed to screen passengers. Martin further alleged that as a direct and proximate result of one or more of these negligent acts or

omissions, he was shot and severely injured. The circuit court, relying exclusively on *Fancil v. Q.S.E. Foods, Inc.*, entered summary judgment in favor of the CTA and against Martin. Martin now appeals from the judgment.

In *Fancil*, our supreme court held that the wife of a police officer who was fatally shot by burglars while making a routine security check of defendant's grocery store failed to state a cause of action for negligence against defendant, because her amended complaint failed to establish the existence of a duty to exercise reasonable care for the police officer's safety. The amended complaint had alleged, among other things, that defendant had negligently failed to provide adequate lighting in the area of a wire enclosure attached to his building, and that as a direct and proximate cause of defendant's negligence, burglars concealed themselves on the premises and ambushed the officer while he was in the process of conducting a security check. After stating that Illinois law imposes "upon the possessor of land, as to a policeman or a fireman who is on the premises in the performance of his official duties at a place where he might reasonably be expected to be, the same duty which the possessor of land owes to an invitee" (60 Ill. 2d 552, 556), our supreme court held that the relation between defendant and the decedent was not such as to give rise to a duty owed by the defendant for the protection of the decedent. Our supreme court reasoned:

> "The risk to which the decedent was subjected because of the conditions which existed upon the defendant's premises was the same risk which every police officer encounters while conducting security checks in both residential and commercial areas. The danger of being ambushed by criminals lurking in poorly illuminated areas, in shadows or behind objects is a risk inherent in the occupation. Hence, the danger to which the decedent was subjected was not an unreasonable risk for a police officer. Also the allegations that the decedent and the other officers were armed to protect themselves from burglars whom they might discover while checking the premises for the presence of unauthorized persons establishes that the officers realized the danger inherent in their occupation and protected themselves against it." 60 Ill. 2d 552, 558.

We believe that the inherent risk principle announced in *Fancil* should not be extended beyond the limited context of landowner/occupier liability. Martin seeks to impose liability on the CTA, not as a landowner/occupier, but based upon the high degree of care that a common carrier is bound to exercise toward its passengers to pre-

vent injuries which could have been reasonably foreseen and avoided by the carrier (see *McCoy v. Chicago Transit Authority* (1977), 69 Ill. 2d 280, 285, 371 N.E.2d 625; *Katamay v. Chicago Transit Authority* (1972), 53 Ill. 2d 27, 29, 289 N.E.2d 623; *Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 374, 50 N.E.2d 497).

The inherent risk principle announced in *Fancil* is analogous to the "fireman's rule" (*Washington v. Atlantic Richfield Co.* (1977), 66 Ill. 2d 103, 108, 361 N.E.2d 282), which in Illinois has been limited to the context of landowner/occupier liability (*Court v. Grzelinski* (1978), 72 Ill. 2d 141, 148, 379 N.E.2d 281). The "fireman's rule" provides that a landowner or occupier owes no duty of care to a fireman to prevent the fire which necessitated his presence on the premises. (*Court v. Grzelinski* (1978), 72 Ill. 2d 141, 147; *Washington v. Atlantic Richfield Co.* (1977), 66 Ill. 2d 103, 108.) In *Washington,* our supreme court stated: "[T]he function of a fireman is to deal with fires, and he assumes the risks normally associated with that function when he enters upon that employment." (66 Ill. 2d 103, 109.) In *Grzelinski,* our supreme court refused to extend the "fireman's rule" to encompass defendants other than landowners or occupiers. 72 Ill. 2d 141, 148.

In *Grzelinski,* our supreme court observed that "[t]he 'fireman's rule' originated and developed at a time when the English common law classified the duties of landowners or occupiers according to the status of the person entering the premises: *i.e.,* trespassers, licensees or invitees." (72 Ill. 3d 141, 147.) The court traced the development of the law in this area and concluded that "the 'fireman's rule' rests not merely on a recognition that certain risks are normally expected in fire fighting, but upon a policy consideration limiting the duty of landowners or occupiers." (72 Ill. 2d 141, 148.) In rejecting the attempt of the defendants in that case to extend the "fireman's rule" beyond its limited context of landowner/occupier liability, our supreme court stated:

> "The rule cannot be expanded to a free-floating proposition that a fireman cannot recover for injuries resulting from risks inherently involved in fire fighting. To do so would be tantamount to imposing the doctrine of assumption of risk onto the occupation of fire fighting and would be directly contrary to the limited concept of assumption of risk in Illinois. In negligence actions, assumption of risk is confined to those situations involving persons who have a contractual or employment relationship with the defendant. (Citations.) In products liability actions such as this, assumption of risk is a bar to recovery

only if the plaintiff is aware of the product defect and voluntarily proceeds in disregard of the known danger. (Citations.) In either case, assumption of risk is an affirmative defense interposed against a plaintiff who voluntarily exposes himself to a specific, known risk, not a preclusion of recovery against a plaintiff whose occupation inherently involves general risks of injury." 72 Ill. 2d 141, 148-49.

Since our supreme court has refused to expand the "fireman's rule" to embrace the broad proposition that a fireman cannot recover from any defendant for any injury resulting from those risks inherently involved in fire fighting, we decline to adopt a similar free-floating proposition that a police officer cannot recover for injuries resulting from risks inherently involved in police work. We can see no reason, either in law or logic, why the inherent risk principle applicable to police officers ought to be broader in scope than the inherent risk principle applicable to firemen. Accordingly, we hold that the inherent risk principle announced in *Fancil* is limited to the context of landowner/occupier liability, and consequently, does not bar Martin's cause of action, which is premised on the duty of care owed by a common carrier to protect its passengers against an unreasonable risk of physical harm.

For the aforementioned reasons, we conclude that the circuit court of Cook County erred in entering summary judgment in favor of the CTA and against Martin. The judgment of the circuit court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

RIZZI, P.J., and McNAMARA, J., concur.