JAMES PACKARD, Indiv. and for the use and benefit of Lenore Packard, *et al.*, Plaintiffs-Appellants, v. ROCKFORD PROFESSIONAL BASEBALL CLUB, Defendant (Rockford Park District, Defendant-Appellee; Rock River Concessionaires *et al.*, Defendants).

Second District   No. 2—92—0977

Opinion filed May 4, 1993.—Rehearing denied June 7, 1993.

Lawrence J. Ferolie and Frank A. Perrecone, both of Lawrence J. Ferolie & Associates, Ltd., of Rockford (Albert F. Ferolie, of counsel), for appellants.

Clark, McGreevy & Johnson, P.C., of Rockford (Donald Q. Manning, of counsel), for appellee.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

James and Lenore Packard (plaintiffs) appeal after the trial court dismissed counts V through XII of their third amended complaint against the Rockford Professional Baseball Club (the Club), Rock River Concessionaires, the Rockford Park District (the Park District), and Keith Keating. The Park District is the only defendant participating in the appeal. The two issues plaintiffs present for review can be consolidated to address the one main issue in this case: whether

counts V through XII of their third amended complaint stated causes of action against the Park District.

The facts are gleaned from plaintiffs' third amended complaint. On June 12, 1991, the Club possessed and operated Marinelli Field in Rockford, Illinois, on which its baseball team played. The Club leased the field from the Park District for 70 home baseball games each season from April 1, 1988, to March 1993. The Club was the preferred occupant from April 1 to October 31 each season and had the exclusive use of the field on each game day "beginning not less than ten (10) hours prior to the scheduled starting time of each Home Game *** until at least three (3) hours after the completion of each Home Game." Security was provided under the lease as follows:

> "Baseball Club shall provide all necessary security and shall do so by paying to Park District the actual costs of stadium and parking area security, which shall be provided by Park District's Ranger Department."

The lease did not designate which party was in charge of scheduling security personnel.

On the evening of June 12, 1991, the Club hosted a game at Marinelli Field. Plaintiffs attended the game that night with their children. Two other fans became intoxicated during the game. Late in the game, employees of the Club, who were not Park District rangers, attempted to remove the two unruly fans. After having trouble controlling the situation, the Club's employees requested the assistance of an off-duty Rockford Park District ranger. According to the third amended complaint, the ranger then directed James Packard, who is a Winnebago County sheriff's deputy and was off duty at the time, to render assistance. Packard was assaulted by the two fans while assisting in their removal from the park.

Plaintiffs brought an action against the Park District, among others, for the injuries James Packard suffered in the assault. Named in the complaint were the Club; Rock River Concessionaires; Keith Keating, one of the fans who assaulted James Packard; and the Park District. The Park District moved to dismiss counts V through XII of plaintiffs' third amended complaint, those counts directed against the Park District.

After a hearing on the motion to dismiss, the trial court issued a memorandum opinion dismissing counts V through VIII. The trial court reasoned that sections 2—103, 3—108, and 4—102 of the Local Governmental and Governmental Employees Tort Immunity Act (the Immunity Act) (Ill. Rev. Stat. 1991, ch. 85, pars. 2—103, 3—108, 4—102) exempt a local public entity from liability for the criminal acts of

third persons. The trial court concluded that the Park District was acting in its governmental capacity under section 8—10 of the Park District Code (Ill. Rev. Stat. 1991, ch. 105, par. 8—10) when it established Marinelli Field and enforced reasonable rules and regulations at the park.

The trial court further ruled that the Park District did not waive its governmental immunity by entering into a written agreement requiring it to provide security at the baseball games. Under section 4—102 of the Immunity Act, a public entity's immunity is not waived by a contract for private security service. Ill. Rev. Stat. 1991, ch. 85, par. 4—102.

Lastly, the trial court found that, as a matter of law, the exceptions to governmental tort immunity, namely, the "proprietary capacity" and "special relationship" exceptions, cannot exist. Moreover, plaintiffs also failed to allege a cause of action for willful and wanton conduct on the part of the Park District as there were no allegations of "course of action" as required under section 1—210 of the Immunity Act (Ill. Rev. Stat. 1991, ch. 85, par. 1—210).

The Park District then filed a motion to clarify the trial court's memorandum opinion because the Park District also had sought dismissal of counts IX through XII. In a subsequent order, the trial court also dismissed counts IX through XII of plaintiffs' third amended complaint. After the trial court found that there was no just reason to delay enforcement or appeal of the order (see 134 Ill. 2d R. 304(a)), plaintiffs filed a timely appeal.

Plaintiffs contend that they have stated causes of action against the Park District. They claim that the Immunity Act was inapplicable because the Park District's conduct was willful and wanton and fell within the "proprietary capacity" and "special relationship" exceptions to governmental tort immunity. The exceptions apply, according to plaintiffs, because the Park District had a contractual obligation to provide security for the Club. Finally, plaintiffs argue that the fireman's rule is inapplicable because the Park District was not the leaseholder of the park and because the rule has not been extended to cover off-duty police officers.

The Park District responds by arguing that it was not acting in a proprietary capacity and did not have a special relationship with the plaintiffs when providing security for the Club. It claims that the agreement to provide security does not affect the tort immunity it receives under the Immunity Act. Further, the Park District argues that the conduct of its employees on the night of the assault was not

willful and wanton. Finally, the Park District agrees with plaintiffs that the fireman's rule is inapplicable to the factual situation at hand.

When the legal sufficiency of a complaint is challenged under section 2—615 of the Code of Civil Procedure (the Code) (Ill. Rev. Stat. 1991, ch. 110, par. 2—615), all well-pleaded facts are taken as true. (*Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 505.) All reasonable inferences are drawn in favor of the nonmovant. (*Geick v. Kay* (1992), 236 Ill. App. 3d 868, 873.) The reviewing court determines whether the allegations in the complaint, viewed in the light most favorable to the plaintiff, are sufficient to state a cause of action. (*Burdinie*, 139 Ill. 2d at 505.) A complaint should not be dismissed for failure to state a cause of action unless no set of facts could be proved which would entitle the plaintiff to relief. *Geick*, 236 Ill. App. 3d at 873.

We begin with an overview of the Immunity Act. The purpose of the Immunity Act is to protect local public entities and employees from liability arising from the operations of government. (Ill. Rev. Stat. 1991, ch. 85, par. 1—101.1.) The definition of a local public entity includes a park district. (Ill. Rev. Stat. 1991, ch. 85, par. 1—206.) The Immunity Act does not affect the liability of a local public entity based on contract. (Ill. Rev. Stat. 1991, ch. 85, par. 2—101.) Moreover, the Immunity Act is in derogation of the common law and must be strictly construed against the public entity. *Kievman v. Edward Hospital* (1985), 135 Ill. App. 3d 442, 445.

The provision of the Immunity Act that is applicable and in dispute is section 4—102, which provides:

> "Neither a public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals. This immunity is not waived by a contract for private security service, but cannot be transferred to any non-public entity or employee." (Ill. Rev. Stat. 1991, ch. 85, par. 4—102.)

Plaintiffs argue that the Park District function in providing security to the Club was not governmental, but based on a contractual obligation between the Park District and the Club. Further, plaintiffs interpret the last sentence of section 4—102 to include only those situations where the local public entity hires a private security service, not

where the local public entity takes on the role of a private security service.

We first discuss whether the Park District was performing a governmental function when it provided security to the Club. If not, under section 1—101.1 of the Immunity Act, no immunity is provided (Ill. Rev. Stat. 1991, ch. 85, par. 1—101.1) and the exceptions to governmental tort immunity need not be proven. The Park District's powers are written in section 8—10 of the Park District Code:

> "All park districts shall have power to plan, establish and maintain recreational programs, provide musical concerts, to construct, equip and maintain *** athletic fields with seating stands, *** and the power to make and enforce reasonable rules, regulations, and charges therefor." Ill. Rev. Stat. 1991, ch. 105, par. 8—10.

Under section 10—7, the Park District also has the power to lease real estate that the park district board deems is not required for park or recreational purposes. (Ill. Rev. Stat. 1991, ch. 105, par. 10—7.) A park district board may employ a police force, which is the conservator of the peace within park property. (Ill. Rev. Stat. 1991, ch. 105, par. 4—7.) Further, a park district can exercise powers necessarily implied from the statutes. *Charlton v. Champaign Park District* (1982), 110 Ill. App. 3d 554, 556.

■ Viewing the sections of the Park District Code together, we find that the Park District was performing one of its governmental functions when it provided security on property it had leased to the Club. The Park District was enforcing rules it had the power to establish on an athletic field it had the power to lease to a private party. Plaintiffs' fear that this result will allow the Park District to enter the business of providing private security service is unfounded as this decision is limited to the Park District providing security on property it owns. See *Burley v. On the Waterfront, Inc.* (1992), 228 Ill. App. 3d 412, 419 (an agreement to provide security protection is not construed as waiving immunity absent a specific provision to that effect).

Because we have found that the Park District was performing a governmental function, the Park District is immune under section 4—102 of the Immunity Act for failing to provide adequate security service. However, we must decide whether this situation falls within either of the two exceptions to tort immunity pleaded by plaintiffs: the proprietary capacity or the special relationship exception.

■ In reality, the proprietary capacity and special relationship concepts are two examples of the special duty doctrine. (*Burdinie*, 139 Ill. 2d at 508.) In order to invoke the special duty doctrine, the

plaintiffs must show that the public entity owed them a special duty that is different from one owed to the public at large. (*Burdinie*, 139 Ill. 2d at 508; *Fryman v. J M K/Skewer, Inc.* (1985), 137 Ill. App. 3d 611, 617.) This special duty may arise "when the [public entity] acts in a private instead of a governmental capacity *** or when it develops a 'relationship' to an individual." *Burdinie*, 139 Ill. 2d at 508.

■ The proprietary capacity portion of the special duty doctrine was discussed in *Comastro v. Village of Rosemont* (1984), 122 Ill. App. 3d 405. This exception to tort immunity arises when a public entity is paid to provide a level of service greater than that provided to the public at large. (*Comastro*, 122 Ill. App. 3d at 410.) Consequently, the public entity has taken on the duty to provide that service in a reasonable, nonnegligent manner and its failure to do so is actionable. *Comastro*, 122 Ill. App. 3d at 410.

In *Comastro*, the Village of Rosemont police department provided security for a rock concert at the Rosemont Horizon (the Horizon). The Horizon was owned by the Village of Rosemont. (*Comastro*, 122 Ill. App. 3d at 406.) A spectator was assaulted by another invitee and sued the village, claiming that it breached a duty owed to him to provide protection against the criminal acts of third persons. (*Comastro*, 122 Ill. App. 3d at 406.) The village admitted that as the owner of the Horizon, its relationship with the plaintiff was that of business invitor-invitee. (*Comastro*, 122 Ill. App. 3d at 409.) The village owed a duty to protect invitees against criminal acts it anticipated or knew could occur based on previous incidents or special circumstances. (*Comastro*, 122 Ill. App. 3d at 408.) The reviewing court found evidence of the village's knowledge of prior criminal acts such that summary judgment in favor of the village was improper. *Comastro*, 122 Ill. App. 3d at 409-10.

The alternate theory relied upon by the *Comastro* court was the police protection theory. If the municipal police were providing protection for a nongovernmental function, namely, the municipality's operation of an arena, the police owed the plaintiff a special duty to provide protection from criminal acts. (*Comastro*, 122 Ill. App. 3d at 410.) Even if the police had been acting in their official capacity, the special duty to protect against criminal acts arises when the police are paid to provide " 'a level of service greater than that afforded other [village] residents.' " *Comastro*, 122 Ill. App. 3d at 410, quoting *Krantstrunk v. Chicago Housing Authority* (1981), 95 Ill. App. 3d 529, 530.

There are a number of reasons why the *Comastro* case is different from the case at bar. First, in *Comastro*, the Village of Rosemont's

relationship with the plaintiff was that of business invitor-invitee. Here, the lease between the Park District and the Club specified that the Club had the exclusive right "to exhibit all professional baseball games at Marinelli Field." The Club also was to provide all necessary maintenance, except for capital improvements, sewer and water, mosquito control, and garbage removal, which were the duties of the Park District. Thus, when a professional baseball game was played on the field, the invitor-invitee relationship was between the Club and plaintiffs.

Second, the Village of Rosemont, by operating the Horizon, was performing a nongovernmental function for which it received no tort immunity. We have already determined that the Park District was performing one of its governmental functions when it provided security to enforce rules and regulations on property it owned and leased out for a purpose designated in the Park District Code. *Cf. Ramos v. City of Countryside* (1985), 137 Ill. App. 3d 1028, 1034 (city's sponsorship of summer recreation program was within its governmental functions).

Further, the remuneration the Park District received for providing security service did not affect the applicability of tort immunity because the lease did not provide that the Club was paying for security that was greater than that normally provided by the Park District on its own property. This fact makes the *Krantstrunk* case distinguishable. In *Krantstrunk* (95 Ill. App. 3d 529), the Chicago Housing Authority paid the Chicago police department to provide *greater* security at the Cabrini-Green housing project than was received by other Chicago residents. *Krantstrunk*, 95 Ill. App. 3d at 530.

■ We hold that the Park District did not owe a special proprietary duty to plaintiffs as security provider at the field because providing security to persons who enter onto park district property is one of its governmental functions pursuant to the Park District Code. (Ill. Rev. Stat. 1991, ch. 105, par. 4–7.) The Club was in the position of "proprietor" as it was obligated under the lease to operate and maintain Marinelli Field during the Club's professional baseball games. This fact distinguishes this case from those relied upon by plaintiffs to prove the "proprietary capacity" exception to tort immunity. Further, the Park District had the statutory power to establish and maintain athletic fields and charge admission therefor. Thus, even if the Park District was the proprietor here, it would be protected by the Immunity Act because it would have been performing a governmental function. The fact that it leased operational and maintenance responsibili-

ties to the Club for professional baseball games does not change our result. Thus, the trial court did not err in dismissing counts V and VII, those counts alleging the Park District's negligence based on proprietary conduct.

■ We next address plaintiffs' contention that there was a "special relationship" formed between the Park District and James Packard such that a special duty arose beyond the scope of the Immunity Act. The "special relationship" doctrine was discussed extensively in *Burdinie*. (*Burdinie*, 139 Ill. 2d 501.) A special relationship is created when, due to special circumstances, it becomes the duty of a public official to act on behalf of a specific individual and not the public at large. (*Burdinie*, 139 Ill. 2d at 508.) For instance, the special relationship duty occurs when law enforcement officials exercise custody or care over an individual, elevating that individual's status beyond that of a member of the public at large. (*Burdinie*, 139 Ill. 2d at 509.) In order for this special duty to arise, four elements must be proven by the plaintiff:

" ' "(1) the municipality must be uniquely aware of the particular danger or risk to which the plaintiff is exposed [citation];

(2) there must be allegations of specific acts or omissions on the part of the municipality [citation];

(3) the specific acts or omissions *** must be either affirmative or wilful in nature [citation]; and

(4) the injury must occur while the plaintiff is under the direct and immediate control of employees or agents of the municipality [citation]." *Bell v. Village of Midlothian* (1980), 90 Ill. App. 3d 967, 970.' " *Burdinie*, 139 Ill. 2d at 508, quoting *Fryman v. J M K/Skewer, Inc.* (1985), 137 Ill. App. 3d 611, 617.

Plaintiffs argue that they have alleged sufficient facts to establish all four elements of a special relationship. They claim that the ranger was aware of the intoxicated and threatening patrons; that the ranger affirmatively placed James Packard in a position of likely assault; and that the ranger, by directing Packard to assist in the removal of the two patrons, placed Packard under the direct and immediate control of the Park District.

The Park District counters by arguing that plaintiffs' allegations were mere conclusions which the trial court correctly rejected. It claims that plaintiffs have alleged no facts demonstrating the Park Districts' knowledge of the particular dangers in this case. No allegations were made that the Park District's acts or omissions were either affirmative or·wilful. Finally, the Park District argues that plaintiffs

have not sufficiently alleged that James Packard was under the direct and immediate control of the Park District at the time he was assaulted.

■ We will begin our discussion with the fourth element, that of direct and immediate control by the public entity, as the two parties discuss this element in greatest detail. On this point, the *Burdinie* court stated:

"[T]he fourth test requirement is met where the public employee creates a position of peril ultimately injurious to a plaintiff, as opposed to situations where a plaintiff merely seeks protection from the public employee that is not normally provided. [Citations.] We interpret this to mean that the control element arises when the public employee initiates the circumstances which create the dangerous situation. *** However, where the plaintiff initiates the contact with the municipal employee, it has been held that the plaintiff is not under the direct or immediate control of the municipality." *Burdinie*, 139 Ill. 2d at 525-26.

The Park District asserts that it was legally impossible for its off-duty ranger to control an off-duty law enforcement officer because the officer had the affirmative duty to assist in emergency situations. In *People v. Barrett* (1977), 54 Ill. App. 3d 994, this court stated:

" '[T]he fact that a police officer is on or off duty, or in or out of uniform is not controlling. "It is the nature of the act performed, not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the officer acted under the color of law." ' " (*Barrett*, 54 Ill. App. 3d at 996, quoting *Stengel v. Belcher* (6th Cir. 1975), 522 F.2d 438, 441.)

The Appellate Court, First District, further elaborated on an off-duty officer's duties in two other cases, *People v. Bouse* (1977), 46 Ill. App. 3d 465, and *Banks v. City of Chicago* (1973), 11 Ill. App. 3d 543. At all times and all places, a police officer has the duty to maintain order and to effectuate arrests, which is not affected by whether the officer is in or out of uniform. (*Bouse*, 46 Ill. App. 3d at 471.) Further, since an officer is "always obligated to prevent the commission of crime in his presence, any action taken by him toward that end, even in his official off-duty hours, falls within the performance of his duties as a police officer." *Banks*, 11 Ill. App. 3d at 550.

We agree with the Park District's position that it did not directly and immediately control James Packard as he took on the role of sheriff's deputy when he entered the affray. Plaintiffs' allegation in

the third amended complaint that the ranger "directed" James Packard to assist in removing the two unruly patrons does not negate the fact that Packard had the duty, at all places and times, to maintain order. (*Bouse*, 46 Ill. App. 3d at 471.) Because plaintiffs have not satisfied one of the four elements to show a special relationship between the public entity and Packard, the trial court correctly dismissed counts IX and XI of plaintiffs' third amended complaint, those counts alleging the Park District's negligence under the special relationship exception.

Plaintiffs cite *Martin v. Chicago Transit Authority* (1984), 128 Ill. App. 3d 837, to support their argument that the Park District is not relieved of its duty to protect Packard, an off-duty sheriff's deputy, from assault. In *Martin*, a Chicago police officer assigned to the department's Mass Transit Unit was off duty, out of uniform and riding the elevated train line. When three men attempted to rob the passengers at gunpoint, the officer identified himself and drew his service revolver. He was shot in the head, shoulder, and leg. (*Martin*, 128 Ill. App. 3d at 838.) The reviewing court reversed the grant of summary judgment for the CTA, reasoning that the inherent risk principal, which limits the duty of landowners to protect police officers in the course of their duty, should not be extended beyond the context of landowner/occupier liability. *Martin*, 128 Ill. App. 3d at 839.

However, *Martin* is limited to its facts because the case dealt with the duty of a common carrier, not that of a landowner. (*Martin*, 128 Ill. App. 3d at 839-40.) The situation at hand is more closely related to a landowner liability case, in which the inherent risk principal limits the duty owed to police officers. See *Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552.

The other cases plaintiffs cite to support their cause of action under the special relationship exception are distinguishable because, in those cases, the plaintiffs had no duty to get involved in the business of the public entity, but entered only after either being directed to by an agent of the public entity or when the public employee initiated the circumstances which created the dangerous situation. (*Gordon v. County of Jackson* (1992), 231 Ill. App. 3d 1017 (citizen assisted a police officer while officer was being assaulted); *Anthony v. City of Chicago* (1988), 168 Ill. App. 3d 733 (citizen assisted fire fighter during a fire); *Gardner v. Village of Chicago Ridge* (1966), 71 Ill. App. 2d 373 (citizen directed by police to identify his attackers and was beaten again when police failed to restrain the attackers).) Because James Packard, as a sheriff's deputy, had the affirmative duty to maintain order and to prevent the commission of crime in his presence, he

could not be under the direct and immediate control of the Park District. As such, under no set of facts could plaintiffs state a cause of action against the Park District under the special relationship exception to the Immunity Act.

■ The remaining counts of plaintiffs' complaint against the Park District, counts VI, VIII, X, and XII, allege willful and wanton conduct. The trial court ruled that plaintiffs failed to state a cause of action for willful and wanton conduct because there were no allegations of "course of action" under section 1—210 of the Immunity Act (Ill. Rev. Stat. 1991, ch. 85, par. 1—210). Plaintiffs argue that section 1—210 is not applicable because they alleged willful and wanton conduct under the common-law exceptions to the Immunity Act. In the alternative, plaintiffs argue that if section 1—210 requires allegations of "course of action," the supreme court recently ruled that the allegation was unnecessary in *Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429. Even if we find section 1—210 applicable, plaintiffs claim that they adequately alleged "course of action."

The Park District contends that the common-law definition of willful and wanton conduct in *Burke* is virtually identical to the statutory definition in the Immunity Act. Thus, *Burke* does not affect the statutory requirement to allege "course of action." Further, the Park District argues that plaintiffs' complaint fails to contain sufficient facts to state a cause of action for willful and wanton conduct against it.

The Immunity Act defines willful and wanton conduct under section 1—210:

> " 'Willful and wanton conduct' as used in this Act means a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to the conscious disregard for the safety of others or their property." (Ill. Rev. Stat. 1991, ch. 85, par. 1—210.)

In *Benhart v. Rockford Park District* (1991), 218 Ill. App. 3d 554, 559, this court held that section 1—210, the section defining willful and wanton conduct under the Immunity Act, was meant to be different from the common-law definition of willful and wanton conduct, thereby limiting the liability of public entities. Because we have already determined that the Park District was performing a governmental function when providing security for the Club, the Immunity Act applies, including the statutory definition of willful and wanton conduct. It is of no import that plaintiffs alleged willful and wanton conduct under the special duty doctrine. If a party seeks to allege willful and wanton conduct on the part of a public entity acting within

its governmental function, then the statutory definition of willful and wanton conduct is applicable.

Plaintiffs' reliance on *Burke* (148 Ill. 2d 429) is misplaced because there the supreme court discussed willful and wanton conduct and its relationship to comparative fault. (148 Ill. 2d at 451-52.) Moreover, the *Burke* court stated that the common-law definition of willful and wanton conduct was "virtually identical" to the definition in section 1—210. (*Burke*, 148 Ill. 2d at 448.) However, the *Burke* court was relying on Illinois Pattern Jury Instructions, Civil, No. 14.01 (2d ed. 1971), which defines "willful and wanton conduct" as *a course of action which shows intentional or reckless behavior.* Under the reasoning of either *Benhart* or *Burke*, plaintiffs must allege a course of action by the Park District as an element of willful and wanton conduct.

A review of plaintiffs' pleading demonstrates that they have not alleged sufficient facts to state a cause of action for willful and wanton conduct against the Park District. They allege that the Park District provided one armed and uniformed ranger to provide security for 3,300 patrons; that the ranger failed to discover or observe the violent and unruly conduct of the two intoxicated patrons; that the Club's security personnel were unable to remove the two fans from the park and requested the assistance of an unarmed and out-of-uniform ranger who was attending the baseball game; that the ranger who assisted knew the patrons were violent and intoxicated; that the ranger directed James Packard to assist in removing the patrons and the ranger left the scene to get his badge; that Packard, who was an unarmed and off-duty sheriff's deputy, was assaulted by one of the patrons; that the Park District acted willfully and wantonly in failing to discover through its agents that the two patrons had become unruly and intoxicated; that the Park District knew or should have known that the Club's employee's attempt to remove the patrons would lead to an assault; and that Park District acted willfully and wantonly in placing James Packard in the position of likely being assaulted by leaving him with untrained security provided by the Club and leaving him without being properly equipped to control the patrons.

Notwithstanding the "course of action" requirement under section 1—210, plaintiffs have not alleged facts establishing that the Park District intentionally caused harm to plaintiffs or showed an utter indifference or conscious disregard for their safety. (Ill. Rev. Stat. 1991, ch. 85, par. 1—210.) At most, plaintiffs have alleged mere conclusions that the Park District acted willfully and wantonly, which are insufficient to state a cause of action. (*Ramos v. City of Countryside* (1985), 137 Ill. App. 3d 1028, 1033.) The ranger who directed James Packard

to assist in removing the two patrons knew that the fans were being belligerent and verbally threatening, but the two patrons had not been violent physically. If the ranger had left Packard with two fans who had displayed physical violence beforehand, then we believe his conduct arguably may have shown an utter indifference for Packard's safety. However, the fans' display of cockiness in refusing to leave the park was not necessarily a precursor to battery. As such, we hold that the trial court did not err in dismissing counts VI, VIII, X and XII, those counts alleging willful and wanton conduct on the part of the Park District.

■ Finally, plaintiffs devote a portion of their brief to a discussion of the fireman's rule. This rule was briefed and argued before the trial court pursuant to the Park District's motion to dismiss. Plaintiffs acknowledge that in Illinois the fireman's rule has been applied only in the context of landowner or occupier liability. (See *Court v. Grzelinski* (1978), 72 Ill. 2d 141, 151; *Martin*, 128 Ill. App. 3d at 840.) The Park District claims that plaintiffs' attempt to characterize this situation as a fireman's rule issue is inappropriate. Although the fireman's rule is analogous to the inherent risk principle discussed in *Fancil* (60 Ill. 2d 552; see also *Martin*, 128 Ill. App. 3d at 840), we agree with the Park District that an analysis of the fireman's rule here is unnecessary, even though the point of plaintiffs' argument is that we should not apply the fireman's rule. The Park District has not attempted to use the fireman's rule as a shield to liability, so we summarily reject its applicability to the case.

For the foregoing reasons, the order of the circuit court of Winnebago County, dismissing counts V through XII of plaintiffs' third amended complaint, is affirmed.

Affirmed.

McLAREN and QUETSCH, JJ., concur.