No. 2--04--0460

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

IMAGE FLOYD, a Minor, by his Mother and Next Friend, Tina Floyd, 

Plaintiff-Appellant,

v.

THE ROCKFORD PARK DISTRICT and PEGGY DECKER,

Defendants-Appellees.

)

)

)

)

)

)

)

)

)

)

)

Appeal from the Circuit Court

of Winnebago County.

No. 03--L--144

Honorable

Ronald L. Pirrello,

Judge, Presiding.

______________________________________________________________________________

JUSTICE McLAREN delivered the opinion of the court:

In the summer of 2002, defendant Rockford Park District sponsored inexpensive summer programs for children.  Registered participants in one such program included plaintiff, Image Floyd, and Sir-Donovan Washington.  The program offered various activities at a number of park district playgrounds and parks, one of which was Beattie Playground.  Defendant Peggy Decker, a director of the park district, supervised the summer activities at Beattie Playground.  On June 26, 2002, plaintiff and Washington were at Beattie Playground when Washington intentionally struck plaintiff on the head with a metal golf club.  Plaintiff sued defendants, contending that defendants were liable for willful and wanton conduct when they failed to supervise Washington while he used the metal golf club.  Defendants moved to dismiss (see 735 ILCS 5/2--619.1 (West 2002)), contending, among other things, that they were immune from liability pursuant to section 3--108 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/3--108 (West 2002)) because plaintiff failed to plead specific facts amounting to willful and wanton conduct (see 745 ILCS 10/1--210 (West 2002)).  The trial court granted the motion to dismiss, and this timely appeal followed.  We affirm.

In his second amended complaint, plaintiff alleged willful and wanton conduct against the park district (count I) and Decker (count II).  In pleading these counts, plaintiff addressed the park district's policy on sporting equipment, Washington's past behavior, and the present incident.  With reference to the policy, plaintiff alleged that the park district previously instituted a rule prohibiting children from using metal baseball bats or metal golf clubs during summer programs.  However, the children were allowed to use such equipment under the tutelage of specially trained directors who came to the summer programs to give the children golf and baseball instruction.  The policy disallowing the use of metal bats and metal golf clubs was formulated after a child was hit by a metal baseball bat in 1996.  The rule remained in effect until March 2000.  

In describing Washington's behavior, plaintiff alleged that, prior to June 26, 2002, Washington "regularly and continuously exhibited belligerent and violent behavior toward the supervisors and the other registered participants."  Plaintiff specified that Washington "fought with, threatened and verbally abused other participants and supervisors," and he "disobeyed orders and directions given to him." 

Plaintiff then addressed the incident, which occurred on June 26, 2002.  On that day, the participants went on a field trip, and Washington behaved badly, exhibiting "aggressive and belligerent behavior" towards supervisors and fellow registered participants.  Despite Washington's violent conduct, he was permitted to remain in the summer program when the group returned from the field trip.  At that time, all of the registered participants, except Washington, assembled under an awning of the Beattie Playground clubhouse.  While the other children, including plaintiff, participated in a group activity, Washington stood in the center of Beattie Playground, swinging a metal golf club that supervisors and counselors allowed him to take from the storage area.  Soon afterwards, plaintiff's mother arrived to pick plaintiff up.  Plaintiff gathered his belongs and approached Washington, attempting to retrieve a pair of sunglasses that Washington took from plaintiff earlier in the day.  Washington responded by  "intentionally and violently" striking plaintiff on the head with the metal golf club, causing serious injuries.  Plaintiff alleged that no counselor or supervisor monitored Washington after he extricated himself from the group. 

In his willful and wanton conduct counts against both the park district and Decker, plaintiff alleged that, with an utter indifference and conscious disregard for the safety of others, defendants (1) allowed Washington to have access to a metal golf club when they knew of, or reasonably should have known of, Washington's violent and belligerent behavior; (2) failed to supervise Washington while he used the golf club; (3) failed to supervise other registered participants while they possessed metal golf clubs; (4) knew, or reasonably should have known, that Washington was capable of injuring another registered participant with the metal golf club; (5) permitted Washington to use the metal golf club despite the previously instituted rule prohibiting their use under such circumstances; (6) failed to discontinue the use of metal golf clubs when the park district knew that the use of metal sporting equipment was dangerous; (7) allowed Washington to remain at Beattie Playground after Washington acted violently and belligerently towards supervisors and other registered participants; and (8) failed to provide properly trained supervisors.  Plaintiff contended that his injuries were the direct and proximate result of one or more of these acts or omissions.

Defendants moved to dismiss the second amended complaint, contending that they did not owe plaintiff a duty to protect him from Washington's intentional act and that they were immune from liability pursuant to section 3--108 of the Act and section 4--102 of the Act (745 ILCS 10/4--102 (West 2002)).  With reference to section 3--108 of the Act, defendants claimed that they were insulated from liability because a public entity is not liable for failing to supervise an activity absent proof of willful and wanton conduct.  745 ILCS 10/3--108 (West 2002).  Defendants properly specified that this portion of their motion was brought pursuant to section 2--619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2--619(a)(9) (West 2002)).  See  
Downey v. Wood Dale Park District
, 286 Ill. App. 3d 194, 199 (1997) (combined motion to dismiss pursuant to section 2--619.1 of the Code is proper if movant indicates under which section of the Code each part of the combined motion to dismiss is brought).  Defendants also claimed that plaintiff failed to plead facts sufficient to establish willful and wanton conduct, as defined in the Act, because he did not present facts establishing that defendants engaged in a course of action preceding and leading to plaintiff's injury.  See 745 ILCS 10/1--210  (West 2002).  Defendants properly indicated that this part of their motion was brought pursuant to section 2--615 of the Code (735 ILCS 5/2--615 (West 2002)).  

In response, plaintiff contended that his "allegations addressing the complete failure to follow Park District rules, knowing of the dangers presented by the steel golf clubs combined with [Washington's] repeated bad conduct and assaultive behavior, when viewed in a light most favorable to the plaintiff, does *** rise to willful and wanton conduct."  Defendants disagreed, claiming that the park district's internal rules and guidelines for the summer program did not negate section 3--108 immunity or constitute evidence of willful and wanton conduct.

In a memorandum of its decision, the trial court granted the motion to dismiss, finding that "these facts could not state a cause of action which could stand in the face of the statutory immunities and the case derived definition of wilful and wanton."  A written order was entered, and this timely appeal followed.

As an initial matter, we note that plaintiff appeals a dismissal entered pursuant to sections 2--615 of the Code (failure to sufficiently plead willful and wanton conduct) and 2--619(a)(9) of  the Code (section 3--108 of the Act bars plaintiff from recovering against defendants).  When a trial court dismisses a complaint pursuant to either section 2--615 or 2--619 of the Code, it must interpret all pleadings in a light most favorable to the nonmoving party.  
Doe ex rel. Ortega-Piron v. Chicago Board of Education
, No. 96574, slip op. at 3 (November 18, 2004).  We review 
de novo
 a dismissal under either section
.  
Doe
, slip op. at 3.

The first issue we consider is whether plaintiff's complaint was properly dismissed pursuant to section 2--615 of the Code for failing to plead facts sufficient to establish willful and wanton conduct.  A section 2--615 motion admits all well-pleaded facts and attacks the legal sufficiency of the complaint.  
Jenkins v. Concorde Acceptance Corp.
, 345 Ill. App. 3d 669, 674 (2003).  Such a  motion should be granted only when the allegations in the complaint, construed in the light most favorable to the plaintiff, fail to state a cause of action upon which relief can be granted. 
Oliveira v. Amoco Oil Co.
, 201 Ill. 2d 134, 147 (2002).  In making this assessment, all well-pleaded facts and inferences drawn from those facts are accepted as true.  
Oliveira
, 201 Ill. 2d at 147.

To
 
sufficiently plead willful and wanton conduct, a plaintiff must allege not only duty, breach, and proximate cause (
Scarano v. Town of Ela
, 166 Ill. App. 3d 184, 187 (1988)), but also that the defendant engaged in a course of action that showed a deliberate intention to harm or an utter indifference to or conscious disregard for the plaintiff's welfare.  745 ILCS 10/1--210 (West 2002); 
Doe
, slip op. at 6; 
Benhart v. Rockford Park District
, 218 Ill. App. 3d 554, 559 (1991).  Defendants argue that they did not owe plaintiff a duty to guard against the intentional acts of a third person, 
i.e.
 Washington.  However, because plaintiff failed to sufficiently allege that defendants' conduct was willful and wanton, we need not resolve the question of duty.  See 
A.D. v. Forest Preserve District of Kane County
, 313 Ill. App. 3d 919, 922 (2000). 

In this case, it is undisputed that the Act covers defendants, as the park district is a public entity and Decker, a park district employee, is a public employee.  745 ILCS 10/1--206, 1--207, 3--108 (West 2002).  As such, defendants are not liable for ordinary negligence in supervising activities, but they are liable for willful and wanton conduct, which is an exception to section 3--108 immunity.  745 ILCS 10/3--108 (West 2002); 
Doe
, slip op. at 6. 

Specifically, section 3--108 of the Act provides as follows:

"(a) Except as otherwise provided in this Act, neither a local public entity nor a public employee who undertakes to supervise an activity on or the use of any public property is liable for an injury unless the local public entity or public employee is guilty of willful and wanton conduct in its supervision proximately causing such injury.

(b) Except as otherwise provided in this Act, neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property unless the employee or the local public entity has a duty to provide supervision imposed by common law, statute, ordinance, code or regulation and the local public entity or public employee is guilty of willful and wanton conduct in its failure to provide supervision proximately causing such injury."  745 ILCS 10/3--108 (West 2002).

As the parties note, section 3--108 was amended, effective December 2, 1998, to add an exception for willful and wanton conduct.  
Henrich v. Libertyville High School
, 186 Ill. 2d 381, 403 (1998).  Because this cause of action arose after the amendment, the blanket immunity that public entities enjoyed before the amendment is not available.  
Valentino v. Hilquist
, 337 Ill. App. 3d 461, 468 (2003).  Now,  if a plaintiff pleads facts sufficient to establish willful and wanton conduct as presently defined in section 1--210 of the Act, the public entity or public employee is not immune from liability.  
Packard v. Rockford Professional Baseball Club
, 244 Ill. App. 3d 643, 655-56 (1993). 

Section 1--210 of the Act defines "willful and wanton conduct" as follows:

" 'Willful and wanton conduct' as used in this Act means a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property.  This definition shall apply in any case where a 'willful and wanton' exception is incorporated into any immunity under this Act."  745 ILCS 10/1--210 (West 2002).

As the plain and ordinary  language of the statute makes clear, a plaintiff must plead a "course of action" that proximately caused the plaintiff's injuries in order to maintain a successful cause of action against a public entity based on a willful and wanton failure to supervise.  Inadvertence, incompetence, or unskillfulness does not constitute willful and wanton conduct.  
Geimer v. Chicago Park District
, 272 Ill. App. 3d 629, 637 (1995).  Rather, to establish willful and wanton conduct, the public entity must be informed of a dangerous condition, know that others had been injured because of that condition, or intentionally remove a safety feature or device from recreational property.  
Winfrey v. Chicago Park District
, 274 Ill. App. 3d 939, 945 (1995)
.

Here, plaintiff failed to plead facts sufficient to establish a "course of action."  Absent from plaintiff's complaint is any allegation that registered participants, or particularly Washington, had used metal golf clubs or baseball bats to batter other children, supervisors, or anyone else.  Prior knowledge of similar acts is required to establish a "course of action."  See 
Murray v. Chicago Youth Center
, 352 Ill. App. 3d 95, 98, 106 (2004) (where the plaintiff was injured after jumping off mini trampoline, conduct of youth program and program's coach was not willful and wanton because, among other things, there were no previous accidents involving the trampoline); 
A.D.
, 313 Ill. App. 3d at 920-21, 923-24 (the plaintiff, who ran into a thorny honey locust tree on park district property, failed to prove park district was willful and wanton in maintaining its property because park district had no knowledge that anyone else was ever injured by the tree or even complained about the tree). 

Moreover, even if there was prior knowledge of a similar injury, a plaintiff must plead facts establishing the similarities between the prior injury and the plaintiff's injury.  See 
Dinelli v. County of Lake
, 294 Ill. App. 3d 876, 878, 880, 884-85 (1998) (bicyclist, who was hit in crosswalk by a motorist, failed to establish "course of action" pursuant to willful and wanton definition even though the plaintiff alleged that another person was struck by a motorist in the crosswalk; what was lacking in the plaintiff's complaint were details about the prior injury and whether the cause of that injury was similar to the cause of the plaintiff's injury); 
cf.
  
Carter v. New Trier East High School
, 272 Ill. App. 3d 551, 552, 556-57 (1995) (the plaintiff, who injured his ankle when he backed into hole on school's tennis court, successfully pleaded willful and wanton conduct against the school board because the plaintiff alleged that the board was aware of prior complaints of and injuries caused by the uneven, broken, depressed, and cracked condition of the tennis court); 
Scarano
, 166 Ill. App. 3d at 185, 188-89, 191 (the plaintiff successfully maintained a cause of action for willful and wanton conduct against town when he pleaded, in great detail, that the slide from which he fell was defective, that other children had  fallen from the slide due to these defective conditions,  and that  the defendant was  aware of these defects and prior accidents resulting from the slide's dangerous condition).

Although plaintiff alleged that the park district instituted a policy prohibiting the use of metal golf clubs and baseball bats after a child was hurt by such equipment, we cannot conclude that this policy constitutes facts sufficient to plead a "course of action" for purposes of willful and wanton conduct.  As defendants note, a public entity's violation of its own internal rules does not constitute proof of negligence, much less willful and wanton conduct.  See 
Morton v. City of Chicago
, 286 Ill. App. 3d 444, 446, 449, 454 (1997) (where police officers pursued vehicle of fleeing suspect and fleeing suspect struck pedestrian, police officers' failure to activate their unmarked car's siren and mars lights, which an internal police rule required, was not proof of willful and wanton conduct); see also 
Geimer
, 272 Ill. App. 3d at 638-39 (and cases cited therein).  The fact that defendants' policy was promulgated after a child was hit with a metal baseball bat does not change our view, as the particular circumstances of that incident were not pleaded.  Specifically, all plaintiff claims is that "[a]fter an accident that occurred in the Rockford Park District in about 1996, wherein a boy was hit with a metal baseball bat, as well as other incidents, the Director of Recreation for the Rockford Park District effectuated new rules that did not allow equipment like metal baseball bats or metal golf clubs to be used by the children in the supervised playground activities except under very limited circumstances."  Like in 
Dinelli
, if plaintiff alleged in detail that the 1996 occurrence or the "other incidents" involved circumstances similar to plaintiff's injuries, he may have succeeded in pleading a "course of action" for purposes of alleging willful and wanton conduct.  Without such facts, we cannot conclude that plaintiff's complaint is sufficient to establish defendants' knowledge of similar situations.  Moreover, we note that the park district's rule was abandoned more than two years before plaintiff was injured.  Thus, even if the rule could serve as proof of defendants' improper conduct, which it does not, we fail to see how this outdated rule could be proof of anything relevant to this case. 

Notwithstanding the "course of action" requirement, plaintiff failed to allege facts sufficient to establish that defendants intentionally caused harm to plaintiff or showed an utter indifference or conscious disregard for plaintiff's safety.  See 
Packard
, 244 Ill. App. 3d at 656 (segregating "course of action" from other elements of willful and wanton, as defined in the Act, in analyzing whether a plaintiff pleaded facts sufficient to establish willful and wanton conduct).  Plaintiff, using the term "utter indifference or conscious disregard for the safety of others," alleged that defendants allowed Washington, who arguably was under defendants' control, to continue to act belligerently and violently and have access to a metal golf club.  Merely alleging an utter indifference or conscious disregard for the safety of others is not enough to withstand a motion to dismiss.  See 
Winfrey
, 274 Ill. App. 3d at 943 (conclusory statements of fact or law do not suffice to state a cause of action).  Moreover, allegations about Washington's general bad behavior, even if defendants were aware of it, do not create a basis for willful and wanton conduct because plaintiff failed to allege exactly what that behavior entailed.  See 
Oropeza v. Board of Education of the City of Chicago
, 238 Ill. App. 3d 399, 403 (1992) (to overcome section 2--615 motion to dismiss, complaint must present well-pleaded 
facts
 establishing willful and wanton conduct).  Lacking in plaintiff's complaint is any allegation that defendants were aware of Washington physically assaulting someone, let alone plaintiff.  If defendants had allowed Washington to have access to the metal golf club, knowing that Washington was 
physically
 violent to others, 
then defendants' conduct arguably may have shown an utter indifference for plaintiff's safety.  However, as pleaded, defendants could not be guilty of willful and wanton conduct because, among other things, Washington's general aggressiveness was not necessarily a precursor to plaintiff's injuries.  See 
Packard
, 244 Ill. App. 3d at 657.  Viewing plaintiff's complaint in a light most favorable to him, we hold that plaintiff did not allege facts sufficient to state a cause of action for willful and wanton conduct.  Thus, the trial court properly granted defendants' motion to dismiss pursuant to section 2--615 of the Code.

Additionally, we hold that plaintiff's complaint was properly dismissed pursuant to section 2--619(a)(9) of the Code because section 3--108 of the Act insulated defendants from liability.  A motion to dismiss pursuant to section 2--619 of the Code admits all well-pleaded facts, the reasonable inferences to be drawn from those facts, and the legal sufficiency of the complaint; however, it asserts affirmative matter to avoid or defeat the claim.  
Compton v. Ubilluz
, 351 Ill. App. 3d 223, 228 (2004).  Here, because we determine that plaintiff failed to plead willful and wanton conduct, we conclude that plaintiff's complaint was properly dismissed pursuant to section 2--619(a)(9) of the Code.  As noted, absent proof of willful and wanton conduct, section 3--108 insulated defendants from liability for improper supervision.  See 
Doe
, slip op. at 6 ("[o]nly willful and wanton conduct is not protected by the immunity conferred in section 3--108").  Because we conclude that defendants were immune from liability pursuant to section 3--108 of the Act, we will not address the parties' arguments concerning immunity under section 4--102 of the Act.

Citing 
Platson v. NSM, America, Inc.
, 322 Ill. App. 3d 138 (2001), plaintiff claims that defendants had a special duty to protect plaintiff and that this duty superceded the immunity conferred in section 3--108 of the Act.  We disagree.  In 
Platson
, a high school work-study student sought to hold her 
private
 employer liable for the intentional conduct of one of her coworkers, contending that she and her employer had a "special relationship," as recognized in tort law, that required her employer to protect her from her coworker.  
Platson
, 322 Ill. App. 3d at 142.  Here, plaintiff seeks to hold defendants, a 
public entity
 and a 
public employee
, liable for Washington's intentional conduct.  This private versus public distinction between 
Platson
 and this case is critical because only the exceptions that the Act provides are available to plaintiff.  See 745 ILCS 10/3--108 (West 2002) (stating specifically that a public entity or public employee is not liable for failing to supervise an activity "[e]xcept as otherwise provided in this Act"); 
Epstein v. Chicago Board of Education
, 178 Ill. 2d 370, 377 (1997).  The "special relationship" or "special duty" doctrine is not one of those exceptions.  Indeed, our supreme court has unequivocally held that such common-law rules cannot impose liability where the Act provides immunities.  
Harinek v. 161 North Clark Street Ltd. Partnership
, 181 Ill. 2d 335, 347 (1998).

In conclusion, we hold that plaintiff failed to allege facts sufficient to establish willful and wanton conduct, and, thus, the trial court properly granted defendants' motion to dismiss based on the immunity conferred in section 3--108 of the Act.  We recognize that this result is harsh, especially when we consider that a young child has been left seriously injured without any recourse against those responsible for supervising the summer program.  See 
Henrich
, 186 Ill. 2d at 412 n.1 (Harrison, J., dissenting) (expressing concern for court's refusal to recognize children's rights "no matter how shocking the facts or how compelling the law might be").  However, if we were to determine that plaintiff sufficiently pleaded facts establishing defendants' willful and wanton conduct, a park district, in order to avoid liability, would have to assign at least one staff member to each registered participant.  Such a far-reaching rule simply is unworkable.  See 
Thornburg v. Crystal Lake Park District
, 171 Ill. App. 3d 329, 334 (1988).  Moreover, even if such a requirement were feasible, we fail to see how defendants could have anticipated, and prevented, Washington's intentional and spontaneous conduct.  See 
Thornburg
, 171 Ill. App. 3d at 334.  Given the Act and the case law interpreting it, we cannot conclude that the trial court reached the wrong result.  Any change in the status of the law must come from the legislature and not the courts.  See 
Kevin's Towing, Inc. v. Thomas
, 351 Ill. App. 3d 540, 549 (2004).

For these reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

CALLUM, J., concurs.

JUSTICE BOWMAN, dissenting:

The majority concludes that plaintiff failed to plead facts sufficient to establish willful and wanton conduct.  I respectfully disagree.  The Act defines "willful and wanton conduct" as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property."  745 ILCS 10/1--210 (West 2002).  In determining whether a complaint states a cause of action to survive a section 2--615 dismissal, the allegations must be construed in the light most favorable to the plaintiff, and all well-pleaded facts and reasonable inferences drawn from those facts are accepted as true.  
Oliveira
, 201 Ill. 2d at 147.   

Here, plaintiff alleged that throughout the summer, Washington "regularly and continuously exhibited belligerent and violent behavior toward the supervisors and the other registered participants.  He fought with, threatened and verbally abused other participants and supervisors" and "disobeyed orders and directions given to him."  On the day of the incident, the children went on a field trip, and Washington showed "aggressive and belligerent behavior" towards supervisors and camp participants.  Despite this behavior, after the field trip the supervisors allowed Washington to opt out of a group activity and swing a metal golf club in the middle of the playground.  When plaintiff approached Washington to retrieve his sunglasses, Washington intentionally struck plaintiff on the head with the club, causing serious injury.

The majority states that plaintiff failed to allege facts sufficient to establish that defendants intentionally caused harm to plaintiff or showed an utter indifference or conscious disregard for plaintiff's safety, because he alleged only "general bad behavior" by Washington, without alleging exactly what that behavior entailed.  Slip op. at 10.  I recognize that legal and factual conclusions unsupported by specific factual allegations should be disregarded (
La Salle National Bank v. City Suites, Inc.
, 325 Ill. App. 3d 780, 790 (2001)), and factual deficiencies cannot be cured by a liberal construction (
Cummings v. City of Waterloo
, 289 Ill. App. 3d 474, 479 (1997)).  However, these propositions do not defeat plaintiff's claim, because plaintiff's allegations go beyond simple factual conclusions; plaintiff alleged that Washington fought with, threatened, and verbally abused others, that he refused to follow orders, and that he was aggressive and belligerent.  
Cf.
 
People ex rel. Madigan v. Tang
, 346 Ill. App. 3d 277, 289-90 (2004) (State made conclusory allegations that the defendant "caused or allowed" environmental violations to occur); 
Goodknight v. Piraino
, 197 Ill. App. 3d 319, 324-25 (1990) (plaintiff's contention, that it could be inferred from her allegations that her drinking and intoxication were involuntary, was a factual conclusion that need not be taken as true for purposes of motion to dismiss).  The dictionary defines "fight" as, among other things, to "strive to overcome or destroy a person, animal, or thing esp. by blows or weapons" (Webster's Third New International Dictionary 847 (1986)), and its definition of "threaten" includes to "promise punishment, reprisal, or other distress to" (Webster's Third New International Dictionary  2382 (1986)).  Plaintiff's allegations, viewed in the light most favorable to him and given their broadest possible meanings, are sufficient to withstand a motion to dismiss.  

Furthermore, a complaint should not be dismissed for failing to state a claim unless it clearly appears that no set of facts can be proved under the pleadings that would entitle the plaintiff to recover.  
American National Bank & Trust Co. v. City of Chicago
, 192 Ill. 2d 274, 279 (2000). Plaintiff has alleged that even though the supervisors had adequate warning of Washington's aggressiveness and violence, they still allowed him to have unsupervised use of a metal golf club.  
In contrast, the majority requires an allegation "that registered participants, or particularly Washington, had used metal golf clubs or baseball bats to batter other children, supervisors, or anyone else."  Slip op. at 8.  Such a heightened requirement apparently stems from the mistaken belief that the Act's definition of "willful and wanton conduct" is significantly different from the common-law definition of the term, and more difficult to satisfy.

   The first case to distinguish the Act's definition of "willful and wanton conduct" from the common-law definition was 
Benhart
, 218 Ill. App. 3d 554.  In 
Benhart
, this court held that the definitions were distinct, noting that the Act's definition added the "course of action" language not present in the common-law definition.  
Benhart
, 218 Ill. App. 3d at 558-59.  However, the Act's definition has now merged into the common-law definition.  For example, the Illinois Pattern Jury Instructions provides the following definition:

"When I use the expression 'willful and wanton conduct' I mean a course of action which [shows actual or deliberate intention to harm] [or which, if not intentional,] [shows an utter indifference to or conscious disregard for (a person's own safety)(and)(the safety of others)]."  Illinois Pattern Jury Instructions, Civil, No. 14.01 (2000).    

This definition is almost identical to the Act's definition.  Significantly, our supreme court has stated that it "and the legislature have defined willful and wanton conduct as a course of action which shows actual or deliberate intent to harm or which, if the course of action is not intentional, shows an utter indifference to or conscious disregard for a person's own safety or the safety or property of others."  
Pfister v. Shusta
, 167 Ill. 2d 417, 421 (1995).  Again, this definition corresponds to the Act's definition.  Accordingly, I believe that there is currently no significant difference between the common-law definition of willful and wanton conduct and the Act's definition.  As a result, the pleading requirements for willful and wanton conduct under the Act should be the same as in other actions, and should not unduly emphasize the "course of action" language.  

Willful and wanton conduct includes actions that have been less than intentional, such as when there has been " 'a failure, after knowledge of impending danger, to exercise ordinary care to prevent' the danger, or a 'failure to discover the danger through *** carelessness when it could have been discovered by the exercise of ordinary care.' "  
Ziarko v. Soo Line R.R. Co.
, 161 Ill. 2d 267, 274 (1994), quoting 
Schneiderman v. Interstate Transit Lines, Inc.
, 394 Ill. 569, 583 (1946).  Willful and wanton conduct is a hybrid between negligent and intentionally tortious behavior (
Ziarko
, 161 Ill. 2d at 275), and it does not occupy a precise point on the continuum of liability between negligent and intentional conduct (
Hill v. Galesburg Community Unit School District 205
, 346 Ill. App. 3d 515, 522 (2004)).  "Under the facts of one case, willful and wanton misconduct may be only degrees more than ordinary negligence, while under the facts of another case, willful and wanton acts may be only degrees less than intentional wrongdoing."  
Ziarko
, 161 Ill. 2d at 275-76.  I believe that plaintiff has sufficiently alleged a cause of action for willful and wanton conduct, and that it should be the role of the jury, not the courts, to determine where on the continuum of liability defendants' behavior falls.  Thus, I would reverse the trial court's decision and remand the cause for further proceedings.