WILLIAMS, Judge.
This is a suit for damages brought by Reuben A. Tuggle, individually and as administrator of the estate of his minor son, Russell Tuggle, age 3. Plaintiff alleged that his son sustained an injury to his knee while enrolled at a day care nursery owned and operated by defendant Mrs. Vera Bass. *791 The district court rejected plaintiff’s demands and he has appealed.
On March 6, 1968 Russell was in the custody of Mrs. Bass at her day nursery located at 713 Louisiana Avenue in Min-den, Louisiana. Mrs. Bass utilizes the front of her home, an enclosed carport, and the back yard for the care of young children ranging from infants to school age for which she received compensation. The yard where Russell was injured contained a swing set, balls, a sand bed and other toys. At the time of the alleged injury Mrs. Bass, Mrs. Henry Boyce and Joyce Ann Seamster, a maid, were the adults on the premises.
During the afternoon children over two and one-half years of age were customarily taken into the yard for a play period. On the above date Mrs. Bass had taken approximately ten children into the yard leaving the other attendants in the house. Mrs. Bass was called to the telephone for approximately two minutes when Mrs. Boyce heard Russell crying. No one knows what happened but he had sustained a serious knee injury requiring several days hospitalization.
The only witness to the accident who testified was Shelly Nixon, age six. She related that Russell was running toward the swings, fell and struck the pole. Mrs. Tuggle, Russell’s mother, testified that when she came to the nursery that afternoon to pick him up Mrs. Bass told her that Russell had been struck by the swing. Mrs. Bass denied making this statement, and further testified that the children told her Russell fell against the frame of the swing. Mrs. Boyce testified that Mrs. Bass told Mrs. Tuggle Russell fell into the swing set.
Shortly after the accident Mrs. Bass gave the swings to her maid and these were not available for inspection at the time of the trial in the position existing at the time of the accident. There is some evidence that the seats to the swings, which were adjustable, were attached in such a manner that they were too high from the ground to have struck Russell on the knee.
Plaintiff alleges defendant was entrusted with the care, custody and control of his young son and since the child was returned to him with a serious injury plaintiff should recover in the absence of defendant’s showing that the injury was sustained by reason other than defendant’s own fault and negligence. Alternatively, plaintiff alleges that the accident was proximately caused by the negligence of defendant’s failure to:
(1) maintain safe playground equipment and swings;
(2) use fences or other safeguards around the swings;
(3) provide reasonable supervision; and,
(4) exercise that degree of care, control, observation, maintenance and supervision legally required of a nursery school operator under the circumstances.
Mrs. Bass’ absence of approximately two minutes to answer a telephone call, when all the children were playing at a sand pile, was held by the trial court to be the only possible act of negligence on her part, but such action was not the proximate cause of the accident. We agree with this conclusion.
Plaintiff argues that as a compensated nursery operator Mrs. Bass was under the highest legal duty toward her charges, citing Oldham v. Hoover, 140 So.2d 417 (La.App. 1st Cir. 1962). There a child tripped and fell on a piece of playground equipment described as a “rocka-way”. The court stated:
“In his brief learned counsel for plaintiff admits that he has been unable to find any case enunciating the degree of *792 care owed by persons operating a nursery in which children of tender age are cared for for a fee. Esteemed counsel for plaintiff, however, cites numerous cases involving the obligations of a public carrier to its fare paying passengers and contends that the jurisprudence in such cases are analagous and applicable to the case at bar. We thoroughly agree with the rule of law set forth in the various cases dealing with the obligations of the public carrier toward its fare paying passengers but point out that the law in this regard is that the carrier, while' owing the highest degree of care, is not the insurer of its patrons.” [140 So.2d 417, 422]
Further, plaintiff contends that in Oldham the court does not spell out the nature of the duty owed; therefore, it is necessary to examine carrier cases to ascertain the nature of such duty, and since he cannot prove how the accident occurred, the nursery school operator bears the burden of exonerating himself from negligence. Plaintiff also analogizes this case to one of a compensated depositary who, if an inanimate object is returned to its owner in damaged condition, bears the burden of showing that the injury or damage was occasioned by reasons other than his own fault.
We know of no case or statute adopting such a theory of law in a nursery school situation, and further, we do not subscribe to this position as the law. In Oldham the court stated:
“It is our opinion that the substantial question presented herein is whether or not appellant has carried the burden incumbent upon him of proving negligence of the defendants from which injury to the child might reasonably have been foreseen. Although defendants are to be held to the highest degree of care, they may not be held liable in damages in the absence of some negligence constituting a proximate cause of the child’s injury.” [140 So.2d 417, 423]
Plaintiff argues that the defendant was negligent in failing to use fences or other safeguards around the swings. We find no merit in this contention. In the case of Lafont v. Maryland Casualty Co., 182 So.2d 562 (La.App. 1st. Cir. 1966) a father sought recovery for injuries sustained by his child who tripped and fell against a concrete and steel support of a water tank. The record showed that the accident occurred while the children were playing “cowboys” around the base of the tower. The court had this observation about the absence of a fence:
“There was very little likelihood that there would be an accident caused by a child running into the steel beams. As argued by the defendants herein, the minor simply ran into an immovable or stationary object, which was no different from a fence, the side of a building, a wall or a telephone pole. There is very little likelihood that a normal person, even a child of tender years, would run into a large shiny object during the daytime. * * *
“The plaintiffs also rely upon the fact that there was no fence to protect the child from the injury he sustained. We cannot accept this reasoning since the child ran into a stationary object, and had he been playing “cowboys and Indians” outside of such a fence, he may have carelessly run into one of the fence posts or the fence itself had he not watched where he was going, as was found in the case at bar.” [182 So.2d 562, 564]
For the reasons assigned, the judgment of the trial court is affirmed. Costs of this appeal are assessed to appellant.