JOHN DOWNEY, Indiv. and as Father and Next Friend of Matthew Downey, a Minor, Plaintiff, v. WOOD DALE PARK DISTRICT *et al.*, Defendants (Milan Diklich, Independent Adm'r of the Estate of Joseph Diklich, Plaintiff-Appellant; Wood Dale Park District, Defendant-Appellee; Northeast Du Page Special Recreation Associates, a/k/a Northeast Du Page Special Recreation Association, *et al.*, Defendants).

Second District    No. 2—96—0287

Opinion filed January 8, 1997.

Kristin E. Hoeksema and James H. Pluymert, both of Robinson, Pluymert & Piercey, Ltd., of Hoffman Estates, for appellant.

James L. DeAno, of Norton & Mancini, of Wheaton, for appellees Northeast Du Page Special Recreation Associates and Wood Dale Park District.

James S. Jendryk, of Querrey & Harrow, Ltd., of Wheaton, for appellees Singles Printing Plus and Dennis B. Wicker.

A. Mark Ialongo, of Ialongo & Meyer, of Chicago, for appellee John Downey.

Bruce Robert Pfaff, of Bruce R. Pfaff & Associates, Ltd., of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

William A. Morgan and Marilyn F. Johnson, both of Board of Education Law Department, of Chicago, for *amici curiae* Chicago Board of Education, Illinois Association of Park Districts, Illinois Association of School Boards and Illinois Governmental Association of Pools.

JUSTICE McLAREN delivered the opinion of the court:

The plaintiff, Milan Diklich, the independent administrator of the estate of Joseph Diklich, filed this action against the defendants, Wood Dale Park District (Park District) and Northeast Du Page Special Recreation Associates (NDSRA), also known as Northeast Du Page Special Recreation Association, and other defendants. The plaintiff's claim centered around the injuries and death suffered by Joseph Diklich after he had been hit by a vehicle after running into the street. This action was consolidated with an action brought by John Downey, individually and as father and next friend of Matthew Downey, arising out of the same accident. Matthew Downey, 12 years old at the time, allegedly was ordered to hold Joseph Diklich's hand before Joseph broke away and ran into the street. Pursuant to section 2—619.1 of our Code of Civil Procedure (735 ILCS 5/2—619.1 (West 1994)), the trial court dismissed the Diklich case against the Park District and NDSRA. Milan Diklich, as the independent administrator of the estate of Joseph Diklich, appeals that dismissal, naming the defendant Park District and defendant NDSRA in his notice of appeal. However, in his appellate brief, Diklich stated that he now waives his appeal as to NDSRA and only brings this appeal as to the defendant Park District. We note that we allowed the filing of an *amici curiae* brief in support of the defendant Park District by the Illinois Association of School Boards, the Board of Education of the City of Chicago, the Illinois Association of Park Districts, and the Illinois Governmental Association of Pools.

In his complaint, plaintiff Diklich alleged that, in the summer of 1994, Joseph Diklich was an autistic eight-year-old child enrolled in the Park District's summer program. The summer program offered activities to children in the community.

The complaint further alleged that, as a result of his autism, Joseph Diklich "was known to have difficulty with safety awareness and in following directions and was known to be difficult to control." Further, as an autistic child, Joseph "required specialized care, attention, supervision and direction from adults."

In order to accommodate Joseph's disability, the Park District assigned one-to-one supervision of Joseph while he participated in the summer program. The complaint alleges that the one-to-one supervision was to provide Joseph with the exclusive attention and supervision of an adult counselor of the Park District at all times.

On August 3, 1994, the Park District's planned activity included a trip to the Wood Dale Water Park. The complaint alleged that, in order to reach the pool, "the children involved in the program, including JOSEPH, were walked along Wood Dale Road." The complaint alleged that, at some point prior to the group proceeding along Wood Dale Road, a one-to-one counselor assigned to another child with special needs left her position with the group and proceeded to the pool in a vehicle. As a result, the complaint alleged that the one-to-one counselor assigned to Joseph took control of the other disabled child, leaving Joseph. The complaint further alleged that, while walking along Wood Dale Road, Joseph was "holding the hand of another child when he broke away and ran onto Wood Dale Road where he was struck and severely injured by a motor vehicle." Joseph later died from his injuries.

Count I of the Diklich complaint sought recovery against the Park District under the Wrongful Death Act (740 ILCS 180/1 *et seq.* (West 1994)). Count I alleged that the Park District "was uniquely aware of JOSEPH's disabilities, including but not limited to his inability to perceive danger, inability to follow directions and his propensity for unpredictable behavior." Further, count I alleged that the Park District owed Joseph a special duty which was breached when he was left without one-to-one adult supervision during the walk to the pool. Further, count I alleged that the Park District, through its employees, acted "willfully and wantonly and exhibited an utter indifference to or conscious disregard for JOSEPH's safety." Count II incorporated the allegations of count I and sought recovery under the Survival Act (755 ILCS 5/27—6 *et seq.* (West 1994)). Counts III and IV of the Diklich complaint were directed against NDSRA and, since plaintiff Diklich has waived his appeal with regard to NDSRA, are not at issue before this court. Counts V and VI of the Diklich complaint, directed against defendants Dennis Wicker, the alleged driver of the vehicle that struck Joseph, and his employer, Singles Printing Plus, remain pending in the trial court.

The defendant Park District filed a section 2—619.1 motion to dismiss (735 ILCS 5/2—619.1 (West 1994)) supported by affidavits. One of the affidavits was submitted by adult counselor Fred Wilhoit. In this affidavit, Wilhoit stated that, within one minute before the accident, Joseph and his supervisor were side-by-side, two feet apart, walking on the sidewalk. The sidewalk was bordered on the west by a row of bushes, blocking access from the sidewalk to that direction. To the east of the sidewalk was a parkway, and to the east of the parkway was Wood Dale Road. The sidewalk, parkway, and Wood Dale Road were all owned by the County of Du Page.

The Park District's motion to dismiss was based upon sections 3—108 (745 ILCS 10/3—108 (West 1994)) and 2—201 (745 ILCS 10/2—201 (West 1994)) of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1—101 *et seq.* (West 1994)) and the plaintiff's failure to state a cause of action under the "special duty" doctrine.

In response to the Park District's motion, plaintiff Diklich did not submit a counteraffidavit and did not file a motion seeking additional time to gather facts in opposition to the motion to dismiss. Also, the plaintiff did not move for leave of court to file an amended complaint.

After a hearing, the trial court granted the Park District's motion to dismiss, made pursuant to section 2—619.1 (735 ILCS 5/2—619.1 (West 1994)), finding section 3—108(a) immunity (745 ILCS 10/3—108(a) (West 1994)) applicable and that no special duty existed. The trial court entered an order granting the Park District's section 2—619.1 motion on February 21, 1996. The plaintiff Diklich appeals.

■ Section 2—619.1, in pertinent part, provides that a combined motion may be brought for motions made under sections 2—615, 2—619, and 2—1005, so long as the movant specifies what each section of our Code of Civil Procedure relates to each "part" of the combined motion. 735 ILCS 5/2—619.1 (West 1994). In its motion to dismiss, the Park District specifies correctly that its section on section 3—108(a) immunity (745 ILCS 10/3—108(a) (West 1994)) is brought pursuant to section 2—619 (735 ILCS 5/2—619 (West 1994)).

The Park District also specifies, in its section 2—619.1 motion to dismiss (735 ILCS 5/2—619.1 (West 1994)), that its section on "special duty" also pertains to section 2—619 (735 ILCS 5/2—619 (West 1994)). This specification is correct in light of our supreme court's recent continued recognition of the "special duty" doctrine as an exception to the Tort Immunity Act. *Doe v. Calumet City*, 161 Ill. 2d 374, 389-90 (1994) ("plaintiffs can escape the statutory immunities granted municipalities and their employees *** by proving facts that show the existence of a special duty").

■ However, much confusion surrounds the continued viability of the special duty doctrine. Various justices of our supreme court, writing separately, have indicated their belief that the "special duty" doctrine is no longer constitutional. *Calloway v. Kinkelaar*, 168 Ill. 2d 312, 330, 339 (1995) (Freeman, J., specially concurring); *Leone v. City of Chicago*, 156 Ill. 2d 33, 51 (Heiple, J., dissenting); *Leone*, 156 Ill. 2d at 47-48 (Bilandic, J., dissenting). Further, our supreme court recently reaffirmed the principle that duty and immunity are different concepts and each should be discussed and applied separately. *Barnett v. Zion Park District*, 171 Ill. 2d 378, 388 (1996). Because the

existence of a duty is a required element of the cause of action for which Diklich seeks recovery (see *Barnett*, 171 Ill. 2d at 386) and because we are inclined to agree with those justices who argue for the recognition of the special duty doctrine as unconstitutional, we believe that the Park District's special duty section more properly should have been brought pursuant to section 2—615, which challenges the legal sufficiency of a complaint. See *Calloway*, 168 Ill. 2d at 331-32 (Freeman, J., specially concurring). Nevertheless, under the present state of the law, the Park District properly labelled its special duty section as pertaining to section 2—619. *Doe*, 161 Ill. 2d at 389-90. Should our supreme court reconsider its holding in *Doe* regarding the continued viability of the special duty doctrine, we determine that Diklich was not prejudiced from having the Park District's section on special duty brought under section 2—619, not section 2—615. See *Bank of Northern Illinois v. Nugent*, 223 Ill. App. 3d 1, 8 (1991) (an improper combined motion to dismiss is not grounds for reversal absent prejudice).

Because of *Doe*'s holding that the "special duty" doctrine is an exception to the Tort Immunity Act (*Doe*, 161 Ill. 2d at 389-90), we shall review both the Park District's Tort Immunity Act argument and its argument that a "special duty" is lacking in the case at bar under our standard of review for section 2—619 (735 ILCS 5/2—619 (West 1994)).

■ Section 2—619 provides, in relevant part, that a party may move for a dismissal on the pleadings on the basis that "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2—619(a)(9) (West 1994). Immunity provided under section 3—108(a) of the Tort Immunity Act (745 ILCS 10/3—108(a) (West 1994)) qualifies as such an affirmative matter. *Payne v. Lake Forest Community High School District 115*, 268 Ill. App. 3d 783, 784-85 (1994).

■ Generally, section 2—619 affords a means of obtaining a summary disposition of law or easily proved issues of fact. *Zedella v. Gibson*, 165 Ill. 2d 181, 185 (1995); *Moon v. Smith*, 276 Ill. App. 3d 958, 961-62 (1995). For purposes of a section 2—619 motion, all well-pleaded facts in the complaint are deemed as true, and only the legal sufficiency of the complaint is at issue. *American National Bank & Trust Co. v. Village of Libertyville*, 269 Ill. App. 3d 400, 403 (1995). Therefore, the "reviewing court is concerned solely with a question of law and should review the trial court's ruling *de novo*." *Payne*, 268 Ill. App. 3d at 785.

## I. Immunity

■ Section 3—108(a) of the Tort Immunity Act provides, in rele-

vant part, that "neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property." 745 ILCS 10/3—108(a) (West 1994). The Wood Dale Park District falls within the statutory definition of a "local public entity." 745 ILCS 10/1—206 (West 1994). *Section 3—108 provides immunity even for allegations of willful and wanton misconduct. Barnett*, 171 Ill. 2d at 391-92; *Payne*, 268 Ill. App. 3d at 786-87.

To avoid confusion, we note that our supreme court stated in *Doe* that the plaintiffs in that case could "escape the statutory immunities granted municipalities and their employees either by proving facts that show the existence of a special duty and proving simple negligence or by proving willful and wanton conduct alone." *Doe*, 161 Ill. 2d at 390. While the court in *Doe* was concerned with section 2—202 of the Tort Immunity Act, which has a separate exception for willful and wanton misconduct (745 ILCS 10/2—202 (West 1994)), we are presently concerned with section 3—108, which does not contain an exception for willful and wanton misconduct (*Barnett*, 171 Ill. 2d at 391-92; *Payne*, 268 Ill. App. 3d at 786-87). Thus, alleging willful and wanton conduct alone, as the plaintiff did in the present case, does not escape the statutory immunity of section 3—108 (745 ILCS 10/3—108 (West 1994)).

■ Diklich argues that the trial court erred by failing to consider whether Joseph Diklich was on public property when the allegedly negligent failure to supervise occurred. We determine that the plaintiff has failed to demonstrate that Joseph was arguably anywhere but on public property while being supervised by the Park District. The plaintiff never pleaded, nor is there any proof in the record, that Joseph Diklich strayed onto private property before the accident. Instead, the plaintiff's complaint asserts that the group of children was walking "along" and "down" Wood Dale Road. Further, the Park District attached an affidavit to its motion to dismiss which asserts that Joseph and his supervisor were walking together on the public sidewalk less than a minute before Joseph ran into the road and that the sidewalk was bordered on the west by a row of bushes, blocking access from the sidewalk to that direction. We determine that the plaintiff, who did not attempt to amend his complaint in the trial court, cannot avoid dismissal by arguing that his own complaint lacks sufficient detail as to where the alleged negligent supervision occurred.

In an attempt to cover this lack of sufficient detail, the plaintiff contends he would have or could have eventually provided an affidavit in response to the Park District's motion to dismiss, but that the

"trial court failed to allow Plaintiff the opportunity to challenge the affidavit of Wilhoit or present facts of its own." Our review of the record reveals that the trial court did no such thing. At oral argument on the motion to dismiss, counsel for the plaintiff stated, "According to Matt Downey—he's going to be providing us with an affidavit—Joey wasn't on the sidewalk the whole time. He was diverging going up and down and off [*sic*]." Faced with vague pleadings with regard to where the supervision occurred and an affidavit from the Park District which indicated that, one minute before the ill-fated accident, Joseph Diklich was on the sidewalk, the trial court stated:

> "In the view I take of the case[,] I don't think it makes any difference whether he went from the sidewalk directly into the street, went from the sidewalk up on some neighbor's property and then ran in the street or did anything. So I am taking that away from your argument and I am ruling that it doesn't make any difference to me. Let's get to point two."

While abrupt, the trial court's decision did not prevent the plaintiff from filing a counteraffidavit. We note that the plaintiff did not specifically request leave of the court to file a counteraffidavit, despite the trial court's ruling, for purposes of making a complete record for an appeal. Nor had the plaintiff previously filed a motion seeking additional time to gather facts in opposition to the motion to dismiss. See 145 Ill. 2d R. 191(b). Indeed, nothing in the record indicates why plaintiff's counsel had not already received the counteraffidavit that plaintiff's counsel claimed she would be receiving from Matthew Downey. Further, the plaintiff did not move for leave of court to file an amended complaint with the trial court. Thus, we determine that the plaintiff cannot avoid dismissal by claiming that his counsel *could* file an affidavit creating a material issue of fact when his counsel did not do so. Simply stated, nothing in the record, other than plaintiff's counsel's assertions, indicates that Joseph Diklich strayed onto private property before the accident. Consequently, we determine that immunity under section 3—108(a) applies. 745 ILCS 10/3—108(a) (West 1994).

We also note that, contrary to Diklich's argument, the trial court's statements above were not error; according to either party's scenario, the supervision occurred while Joseph was on the sidewalk. Under section 3—108, it is the location of the supervision, rather than the location of the accident leading to injury, that determines whether immunity applies. See *Castenada v. Community School District Unit No. 200*, 226 Ill. App. 3d 514, 516 (1992). Thus, because the allegedly negligent and/or willful and wanton act occurred on public property, the defendant is immune from liability. 745 ILCS 10/3—108(a) (West 1994).

## II. Special Duty

■ Diklich argues that, even if section 3—108 applies, the trial court erred in finding that the Park District did not owe Joseph Diklich a special duty. The special duty doctrine applies where a municipality, or its agent, has a special relationship with the plaintiff that creates a duty different than that owed to the general public. *Doe*, 161 Ill. 2d at 385-86. While the constitutionality of the special duty doctrine has been called into question (*Calloway*, 168 Ill. 2d at 330 (Freeman, J., specially concurring); *Leone*, 156 Ill. 2d at 53 (Heiple, J., dissenting); *Leone*, 156 Ill. 2d at 47-48 (Bilandic, J., dissenting)), the special duty doctrine remains an exception to the Tort Immunity Act. *Doe*, 161 Ill. 2d at 385-86; see *Fatigato v. Village of Olympia Fields*, 281 Ill. App. 3d 347, 356 (1996).

The special duty exception has four elements: (1) the municipality must be uniquely aware of the particular danger or risk to which the plaintiff or the plaintiff's decedent is exposed; (2) there must be specific acts or omissions on the part of the municipality; (3) the specific acts must be affirmative or willful in nature; and (4) the injury must occur while the plaintiff or the plaintiff's decedent is under the direct and immediate control of municipal employees or agents. *Doe*, 161 Ill. 2d at 386; *Burdinie v. Village of Glendale Heights*, 139 Ill. 2d 501, 508 (1990), *overruled in part on other grounds*, *McCuen v. Peoria Park District*, 163 Ill. 2d 125 (1994). We determine that the first and fourth elements are not present in the case at bar.

■ As to the first element, the plaintiff must show that the public entity possessed actual knowledge of a specific risk of imminent injury (*Burdinie*, 139 Ill. 2d at 524) and actual knowledge that a particular person was endangered thereby (*Lawson v. City of Chicago*, 278 Ill. App. 3d 628, 638 (1996); *Thames v. Board of Education*, 269 Ill. App. 3d 210, 216 (1994); *Fryman v. JMK/Skewer, Inc.*, 137 Ill. App. 3d 611, 617 (1985)). Thus, the first element has been deemed satisfied when a police officer knew the risk of standing between cars and a traffic lane and knew that ordering a driver to stand *there* put her at risk (*Leone*, 156 Ill. 2d at 40) and where a fire fighter knew the risk associated with opening elevator doors in a burning building and also knew that ordering a civilian to do so put the civilian at risk (*Anthony v. City of Chicago*, 168 Ill. App. 3d 733, 737 (1988)). Also, implicit in the court's decision in *Gardner v. Village of Chicago Ridge*, 128 Ill. App. 2d 157 (1970), was that the police knew of the danger to the plaintiff from the plaintiff's assailants due to the plaintiff relating the assailants' threats to the police and that ordering the plaintiff to come over to the car to identify the suspects put the plaintiff at risk. *Gardner*, 128 Ill. App. 2d at 160-63.

However, those cases are distinguishable from the one at bar because the Park District was not *uniquely* aware of the *particular* danger or risk to which Joseph Diklich was exposed. See *Burdinie*, 139 Ill. 2d at 523. The complaint alleged *generally* that "[a]s a result of the Autism, JOSEPH was known to have difficulty with safety awareness and in following directions and was known to be difficult to control." Further, the complaint alleged that the Park District "was uniquely aware of JOSEPH's disabilities, including but not limited to his inability to perceive danger, inability to follow instructions and his propensity for unpredictable behavior." However, the complaint did *not* allege that the Park District knew that Joseph was likely to break away from his fellow participant's hand or that Joseph might suddenly run into the street, which are the particular risks that endangered Joseph.

In *Burdinie*, our supreme court faced a situation where an individual was injured when he jumped into a swimming pool after being ordered to do so by a park district instructor. In determining that the element of "unique awareness of a particular risk" was not established, the *Burdinie* court stated:

> "People are enjoying the use of municipal swimming pools all over the State on a daily basis, and are probably jumping into the pools when they do so, without being exposed to any particular danger which the operators of the pool are uniquely aware of. Without clearly articulated factual allegations, we cannot assume otherwise." *Burdinie*, 139 Ill. 2d at 523.

In the case at bar, Diklich has not alleged that walking an autistic child down a road, while having someone hold that autistic child's hand, is inherently negligent. We determine that allegations concerning autistic children, *e.g.*, inherently "difficult to control" or "with a propensity for unpredictable behavior," relate the presence of a *general* risk or potential for danger. Without more clearly articulated factual allegations than are present in the case at bar, we may not determine that the *unique* awareness of a *particular* danger element of the special duty doctrine has been met. See *Burdinie*, 139 Ill. 2d at 523-24.

We decline the plaintiff's invitation, made in his reply brief, to grant leave to amend his complaint. We note that the plaintiff did not make such a motion before the trial court.

In making our determination regarding the "*unique* awareness of a *particular* danger," we are also aware of our supreme court's admonition against "guaranteeing the personal safety" of every participant in a park district program due to the mere "*possession of superior knowledge*" of the park district. (Emphasis added.) *Burdinie*,

139 Ill. 2d at 522. If the mere knowledge of a disability, such as Joseph's autism, constitutes "*unique* awareness of a *particular danger*" sufficient to impose a special duty, then public entities would become the insurers of the personal safety of every disabled participant. We find this position untenable.

On a related matter, we fail to see how the plaintiff's pleadings indicate that the Park District was in possession of "unique awareness" of the dangers of the decedent's autism or of the street beyond that known by the public at large. See *Burdinie*, 139 Ill. 2d at 523. It may be that our supreme court, when it used the word "unique," meant the term to apply to whether the municipality had an awareness different from the injured party. However, the word "unique" is defined as "being the only one: SOLE" or "UNUSUAL, NOTABLE." Webster's Third New International Dictionary 2500 (1986). Thus, the use of the term "unique" indicates that our supreme court intended that the awareness required for this element be in the *sole* possession of the municipality, as opposed to *anyone* else. In the present case, nothing indicates that the public at large did not know of the dangers of running into a street.

Due to all of the reasons set forth above, we determine that the plaintiff did not allege sufficient facts to satisfy the first element of the special duty doctrine.

As to the fourth element of the special duty doctrine, we determine that the trial court did not err in finding that the "direct and immediate control" element of the special duty doctrine was not met. Our supreme court held that the control element requires that the public employee initiate the circumstances that create the dangerous situation. *Doe*, 161 Ill. 2d at 386; *Burdinie*, 139 Ill. 2d at 525-27. Thus, "[w]here a private citizen asks the municipal employee to perform a task, and the employee performs the task so as to injure the citizen, the citizen cannot claim he was under the municipality's direct or immediate control." *Burdinie*, 139 Ill. 2d at 526. Further, " ' "[t]he [municipality] must protect those it throws into snake pits, but [it] need not guarantee that volunteer snake charmers will not be bitten." ' " *Burdinie*, 139 Ill. 2d at 526, quoting *Henderson v. Bradford*, 168 Ill. App. 3d 777, 781 (1988), quoting *Walker v. Rowe*, 791 F.2d 507, 511 (7th Cir. 1986).

We determine that the element of direct and immediate control is lacking. In *Burdinie*, a plaintiff voluntarily joined a swimming class being offered by a park district. *Burdinie*, 139 Ill. 2d at 526. The court held that, despite the fact that the park district "announced that it stood ready to teach swimming classes for a $10 fee *** , it was at plaintiff's initiative that the fee was offered. Defendant [the park

district] did not go asking for it." *Burdinie*, 139 Ill. 2d at 527. Thus, "plaintiff initiated the contact, even though the resulting contract was a mutual one. The fact that plaintiff's injuries occurred during the course of defendant's fulfilling plaintiff's request to teach him to swim does not mean that plaintiff was under the instructor's direct or immediate control." *Burdinie*, 139 Ill. 2d at 527.

Similar to *Burdinie*, in the present case, the Park District did not solicit the decedent into participating in its program. Instead, the plaintiff, or in this case the plaintiff's parents, came to the Park District and initiated the contact. The fact that supervision was to be assigned to the decedent does not affect the underlying nature of the relationship. As in *Burdinie*, the contract here was a mutual one. See *Burdinie*, 139 Ill. 2d at 527. The fact that the decedent's injuries occurred during the course of the Park District's fulfilling his, or his parents', request to participate in the summer program does not mean that the plaintiff satisfied the element of direct or immediate control. See *Burdinie*, 139 Ill. 2d at 527.

Moreover, we determine that public policy bolsters a finding of no special duty in the present case. In *Doe*, our supreme court stated:

"Plaintiffs' argument that control of the scene satisfies the control element is unavailing. Police and fire departments, as paramilitary organizations, are by their nature expected to exercise control over a scene requiring their services. The public duty rule and the statutory immunities granted police officers rest on the sound public policy that municipalities undertake these services without becoming insurers. Applying the plaintiffs' definition of the control element would cause the exception to swallow the rule and would make municipalities liable for simple negligence whenever officers respond to an emergency. The public duty rule protects against just this sort of paralyzing liability." *Doe*, 161 Ill. 2d at 387.

While we are not presently concerned with police or firemen and a park district is not a paramilitary organization, the above concerns still find applicability to the case at bar. When dealing with a participant suffering from autism or other disability, a park district, because of the very nature of the disability, can be expected to exercise more control than it usually would. Under the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.* (1994)) and the Rehabilitation Act of 1973 (29 U.S.C. § 701 *et seq.* (1988)), *amici* contend that a park district is required to accommodate disabled persons so that programs like the one here are available to people like Joseph. Thus, if we were to apply the special duty exception in the case at bar, park districts could easily become insurers of dis-

abled participants, to whom they could not deny participation. The statutory immunities granted municipalities rest on the sound public policy that municipalities undertake these services *without* becoming insurers. *Doe*, 161 Ill. 2d at 387. If the special duty exception were to be applied in that fashion, the exception would swallow the rule. See *Doe*, 161 Ill. 2d at 387. Indeed, the practical result of this would be fewer recreational programs offered or none at all, in light of the paralyzing potential liability faced by park districts. Thus, we determine that both precedent and public policy mandate our determination that the Park District did *not* initiate the circumstances which created the dangerous situation. See *Burdinie*, 139 Ill. 2d at 527.

Further, the *Burdinie* court went on to state that the plaintiff there "was not forced to jump into the pool, nor was he ordered or instructed to jump by a person whom he could have reasonably believed he must obey." *Burdinie*, 139 Ill. 2d at 526-27. In the case at bar, no agent of the Park District forced, ordered, or instructed Joseph to break away from the participant's hand which he was holding on to, nor did any agent of the Park District force, order, or instruct Joseph to run into the street. Thus, we need not even inquire into whether Joseph reasonably believed he had to obey such an order. None was given.

Clearly, this case differs from all the cases that have found a special duty to exist. In all of those cases but one, an agent of the municipality forced, ordered, or instructed the plaintiff to do something that led to injury. In *Leone*, a police officer ordered the plaintiff to exit her vehicle and directed the plaintiff to stand in the area between his vehicle and her vehicle. *Leone*, 156 Ill. 2d at 36, 40. In *Anthony v. City of Chicago*, a plaintiff was instructed by a fireman to aid in opening an elevator door in a burning building. *Anthony*, 168 Ill. App. 3d at 735. In *Gardner v. Village of Chicago Ridge*, a plaintiff was ordered by police to walk over to a police car to identify suspects, who then attacked the plaintiff as the suspects had threatened earlier. *Gardner*, 128 Ill. App. 2d at 160-62.

In *Gordon v. County of Jackson*, 231 Ill. App. 3d 1017, 1019 (1992), a plaintiff was injured while coming to the aid of a police officer engaged in a physical altercation. The police officer did not specifically order the plaintiff to come to his aid. However, the *Gordon* court relied upon our supreme court's statement that "the control element arises when the public employee initiates the circumstances which create the dangerous situation" (*Burdinie*, 139 Ill. 2d at 525-26) to find that the special duty doctrine applies. Further, the court found that the officer "brought the snake pit to [the] plaintiff." *Gor-*

*don,* 231 Ill. App. 3d at 1022. In the present case, the Park District did not initiate the circumstances which created the dangerous situation merely by offering a recreational program. Instead, the decedent's parents initiated the contact with the Park District. Moreover, with regard to bringing "the snake pit to [the] plaintiff," we believe that the Appellate Court, Fifth District, has misinterpreted our supreme court's pronouncement that " ' "[t]he [municipality] must protect those it throws into snake pits, but [it] need not guarantee that volunteer snake charmers will not be bitten." ' " *Burdinie,* 139 Ill. 2d at 526, quoting *Henderson,* 168 Ill. App. 3d at 781, quoting *Walker,* 791 F.2d at 511. We decline to apply the special duty doctrine where the municipality did not engage in any metaphorical act of "throwing."

Also indicative of the fact that force, orders, or instructions are required in order to satisfy the "direct and immediate control" element (see *Burdinie,* 139 Ill. 2d at 526-27) is our supreme court's recent decision in *Doe,* 161 Ill. 2d 374. In that case, the plaintiff alleged that a police officer owed a special duty where the officer, responding to a call, refused to break down a door while a girl was being sexually assaulted inside. *Doe,* 161 Ill. 2d at 382-83. The court found that the officer did *not* owe a special duty because the "direct and immediate control" element was not met. *Doe,* 161 Ill. 2d at 387. In part, the court found that this was because the officer did not "order" the children to remain in the house. *Doe,* 161 Ill. 2d at 387. Thus, without the presence of force, orders, or instructions, the "direct and immediate control" element cannot be shown.

Consequently, because the Park District did not initiate its relationship with Joseph and no agent of the Park District forced, ordered, or instructed Joseph to run into the street, we determine that the trial court did not err in finding that the direct and immediate control element of the special duty doctrine was not met.

Because we determine that two of the required elements of the special duty exception are not present in the case at bar, we need not discuss the other elements thereof.

We decline to hold, as the Park District requests, that the special duty doctrine applies only in the context of law enforcement. While it is true that, historically, a special duty has been found to exist only in cases involving law enforcement or fire protection (see *Leone,* 156 Ill. 2d 33; *Gordon,* 231 Ill. App. 3d 1017; *Anthony,* 168 Ill. App. 3d 733; *Gardner,* 128 Ill. App. 2d 157), so long as the elements set forth by our supreme court are met, we see no reason to limit the doctrine to those circumstances.

### III. Proximate Cause

■ While this issue was not raised by the parties, we want to comment on an aspect of the pleadings. We do so in order to preclude any speculation that, absent tort immunity, the plaintiff has stated a cause of action. The plaintiff pleaded that "[a]s a direct and proximate result of one or more of the above mentioned acts or omissions of the Defendants and/or its agents or employees[,] [which includes leaving Joseph without adult one-to-one supervision] JOSEPH suffered serious injuries." The plaintiff's complaint implicitly argues that the lack of one-to-one supervision is the equivalent of one-to-one custody. However, nothing in the record indicates that Joseph would not have broken free of a one-to-one supervisor's hand while walking along the road, just as he had broken free of his fellow participant's hand. Indeed, even if the Park District had assigned two-to-one supervision, nothing in the record indicates that Joseph would not have broken free of both supervisors' hands and run into the street. In other words, the plaintiff attempts to establish proximate cause by *alleging* lack of "one-to-one" supervision while *implying* proximate cause was due to the failure to sufficiently restrain the decedent. Although not dispositive of this appeal, we believe the complaint was insufficient as pleaded. In similar instances where adults were charged with negligent supervision after injuries to children occurred, courts have found that "a short absence from supervision of a child is not the proximate cause of the child's injury if the supervisor's presence and attention would not have prevented the injury." *Ward v. Mount Calvary Lutheran Church*, 178 Ariz. 350, 364, 873 P.2d 688, 696 (1994); see *Ohman v. Board of Education*, 300 N.Y. 306, 90 N.E.2d 474 (1949); *Tuggle v. Bass*, 240 So. 2d 790 (La. App. 1970).

We are not insensitive to the plaintiff's loss, which will not be compensated, if monetary compensation could ever recompense one for the loss of a loved one, from this particular defendant. A tragedy results whenever a child is injured and an even greater tragedy occurs when those injuries result in death. However, our legislature has provided municipalities with immunity for an injury caused by a failure to supervise on public property. 745 ILCS 10/3—108(a) (West 1994). Further, the special duty doctrine remains a narrow legal concept which, to date, courts have only found to arise in four cases. *Leone*, 156 Ill. 2d 33; *Gordon*, 231 Ill. App. 3d 1017; *Anthony*, 168 Ill. App. 3d 733; *Gardner*, 128 Ill. App. 2d 157. Despite the tragedy at the

crux of this case, the laws of this state compel us to affirm the judgment of the circuit court of Du Page County.

Affirmed.

BOWMAN and RATHJE, JJ., concur.